John W. PORTER, Jr., and Jno. W. Porter, also known as John W. Porter, both individually and also as sole partners dba the law firm of Porter & Porter, Plaintiffs in Error,

v.

OKLAHOMA BACONE COLLEGE TRUST, John Brown University, Texas Christian University, Texas Wesleyan College, University of Texas, Texas A & M College, Southern Methodist University, Baylor University, Oklahoma State University, University of Oklahoma, The General Board of Education of the Methodist Church, a corporation, First National Bank in Dallas, Texas, The First National Bank & Trust Co. of Muskogee, Oklahoma, Bruce Bennett, Attorney General of the State of Arkansas, Will Wilson, Attorney General of the State of Texas, and Mac Q. Williamson, Attorney General of the State of Oklahoma, Defendants in Error.

No. 38271.

Supreme Court of Oklahoma.

Sept. 29, 1959.

Rehearing Denied Nov. 3, 1959.

Application for Leave to File Second Petition for Rehearing Denied

Nov. 24, 1959.

**330** ■

Porter & Porter, Muskogee, for plaintiffs in error.

A. Carl Robinson, Julian B. Fite, Muskogee, for defendants in error Oklahoma Bacone College Trust, John Brown University, Texas Christian University, Texas Wesleyan College, University of Texas, Texas A & M College, Southern Methodist University, Baylor University, Oklahoma State University, University of Oklahoma, and First National Bank in Dallas, Texas, as independent executor.

Will Wilson, pro se, C. K. Richards, Asst. Atty. Gen., for Will Wilson, Atty. Gen. of Texas.

BERRY, Justice.

Murray Case Sells, hereafter referred to as "testator" died testate in 1953. At the time of his death testator's domicile was Gregg County, Texas.

In his last will testator named the First National Bank of Dallas, Texas, hereafter referred to as "Texas bank", as his "independent executor". The Texas bank was directed to convert all of testator's property into cash. In said will which was dated November 22, 1950, testator made cash bequests in varying amounts to a number of persons and corporations. No controversy exists concerning these bequests. In paragraph numbered "XXI" of his will, testator bequeathed the residue of his estate to defendants in error, Oklahoma Bacone College Trust, John Brown University, Texas Wesleyan College, University of Texas, Texas A & M College, Southern Methodist University, Texas Christian University, Baylor University, Oklahoma A & M College and University of Oklahoma.

Five of the above named beneficiaries were directed to use thirty percent of their bequests in making permanent improvements upon their campuses. A suitable and permanent plaque bearing testator's name was to be placed upon said improvements. All of the residuary beneficiaries were directed to use that portion of their bequests which was not used for permanent improvements in establishing a fund to be known as the "Murray Case Sells Foundation", which fund was to be used in making loans to "deserving and needy" students.

By codicil dated May 24, 1951, testator undertook to revoke paragraph XXI of his will and to substitute therefor the provisions of the codicil. The provisions of the codicil did not serve to change the beneficiaries taking the residue of testator's estate under testator's will or their share therein or the purpose for which same was to be expended. The codicil did, however, provide for a trust and imposed additional restrictions on the use of the residuary estate. The Texas bank was named as trustee and plaintiffs in error, hereafter on occasions referred to as "the Porters", contend that under the following quoted provisions of the codicil they were in fact given the status of co-trustees of the trust and were given a pecuniary interest in the trust and in testator's estate:

"'Paragraph 6. Statements reflecting the administration of the "Building Account" and the "Murray Case Sells Foundation" shall be rendered annually to the university or college for which such accounts are set up, and at the same time two copies of each thereof shall be furnished to Jno. W. Porter or his successors to his duties as hereinafter provided * * *.

"'Paragraph 29. It is my will and I hereby direct that Jno. W. Porter, an attorney of Muskogee, Oklahoma, and successors to his duties as herein provided for, shall be appointed, engaged and retained by my executor as his attorney as such executor and for my estate in the probation of my will and said estate, and shall be appointed, engaged and retained by my trustee upon distribution of my said estate to such

trustee, as attorney in all matters in the administration of my trust estate. Each such successor is to be a reputable attorney at law and is to be appointed by his predecessor in writing. Such attorney as herein provided for shall be paid his expenses and reasonable compensation by my executor and estate for his services in the probation of my will and estate, and shall be paid his expenses and reasonable compensation by the trustee of my trust estate for his services in the administration of such trust estate. Such attorney shall make periodical and other reasonable investigations of said educational institutions as to strict compliance with their duties imposed and reasonably contemplated by the applicable terms and provisions of this codicil, and to report any and all violations thereof to the trustee * * *.' "

The above quoted provisions form the basis of the Porters' asserted right to all relief sought herein except the $200,000 additional attorneys fee for which they, by cross-bill, seek judgment against the Texas bank.

The will and codicil were offered for probate in the County Court of Gregg County, Texas, and the Texas bank was appointed independent executor of the estate. In the matter of probating the estate in Texas, Jno. W. Porter, one of the plaintiffs in error, was employed by said bank to assist a Texas attorney and it is for services rendered in said capacity that the Porters herein seek judgment against the Texas bank for $200,000 as additional attorneys fees.

After the will and codicil were offered for probate in Texas, ancillary proceedings to probate the will and codicil were instituted in the County Court of Muskogee County, Oklahoma. No contest to the admission of the will and codicil to probate in Oklahoma was filed. In this proceeding the First National Bank and Trust Company of Muskogee, hereafter referred to as "Oklahoma bank", was appointed as administrator with will annexed of the Oklahoma portion of testator's estate, which es-

tate was of the aggregate value of approximately $90,000. The aggregate value of the Texas portion of testator's estate exceeded $9,000,000. As reflected by our opinion in No. 37,996, 346 P.2d 335, a decree of distribution was made in the Oklahoma probate proceeding, the validity of which decree is attacked by the Porters in said No. 37,996.

Following the offering of testator's will and codicil for probate in Texas, two different persons attacked the validity of the will and codicil, and asserted rights to the estate as heirs of testator. A settlement was reached in each of said contests. In connection with one of the settlements, the court in which the will and codicil were being probated found that testator was without mental capacity to make the codicil and same was therefore found to be without force and effect. This judgment became final. This is the judgment that the Porters contend was obtained through conspiring and conniving on the part of some of the defendants in error.

In 1957, and after the ancillary probate proceeding had been instituted in the County Court of Muskogee County, Oklahoma, the ten educational institutions named as residuary beneficiaries under testator's will and codicil thereto, instituted this action. The Porters and all of the defendants in error who are not educational institutions were named as parties defendant. In their petition the educational institutions alleged in substance that in the domiciliary probate proceeding in Texas it was found that testator's codicil was invalid, same having been executed at a time when testator was without mental capacity to make a will; that due to lapse of time testator's codicil was not contestable in the ancillary probate proceeding in Oklahoma; that the codicil set up a trust to be administered by the Texas bank; that "there exists the anomalous situation that a small estate only can be administered under a testamentary provision, anticipating a very large estate, and cannot be administered by the trustee named therein, nor in the place therein named"; that the "interests of all parties

can be best subserved by decreeing distribution under the last will and testament" of testator.

The Porters filed an answer and counterclaim to the petition of the educational institutions. In said answer and counterclaim the Porters stated in substance that on February 13, 1953 Jno. W. Porter notified the Texas bank that as provided in paragraph numbered 29 of the codicil John W. Porter, Jr. had been designated as his successor; that the educational institutions "and each of them received copies of said Will and Codicil and knew the contents thereof a short time after the originals thereof were admitted to probate March 10, 1953, but plaintiffs and each of them brought about and caused the very anomalous situation of which they are now complaining, through their own wrongful acts and conduct as joint tortfeasors forming the basis of the action alleged in their said Petition, resulting directly in great and irreparable damage to said Porters, all as follows, to-wit: That on or about March 1, 1956 Gertrude Parker and Edward Milliken, two heir beneficiaries of the said Murray Case Sells, deceased, filed a court action in Case No. 5815 in the County Court of Gregg County, Texas against said Executor, contesting the Will and Codicil and the probate thereof in Texas, and they thereafter offered to settle said contest and have it dismissed with prejudice for the sum of $750,000.00. However, said plaintiffs (educational institutions), apparently wanting the bulk of said estate pursuant to the Will without the investigation and supervision provided for in the Codicil, and seeing an opportunity in said contest to accomplish such, they conspired and connived with said contestants on the one hand and said Executor on the other hand to the effect that they (said plaintiffs) would approve said $750,000.00 being paid said contestants out of the estate assets if the contestants would go through with the contest only as to the Codicil and introduce evidence at the contest trial attacking only the Codicil, and with the further understanding and assurance that neither said Executor nor any of them (said plaintiffs) would challenge such evidence or offer any contradictory evidence or make any defense of said Codicil, all in spite of the Executor's duty under law to uphold and defend the Codicil and in willful and wanton disregard of said Porters' rights and duties under the Codicil, all of which was done and accomplished at said trial in said contest case in Texas on or about June 22, 1956 resulting in a final court decree then and there adjudging said Codicil invalid. That said plaintiffs (educational institutions) participated in and were represented in that litigation and trial. That during all said conspiring and conniving and up to and including said contest trial, said Executor had available and/or in its possession sufficient evidence to refute and overcome all the evidence produced by the contestants at said trial, and plaintiffs (educational institutions) and said Executor had knowledge thereof, but they all refused to make use thereof. That while said Jno. W. Porter was required to be and appear in said trial as one of the attorneys for said Executor along with its regular Bank attorney, he was there only in that capacity and to voice only the wishes and views of his client (Executor) and in no other capacity, he having already personally disapproved of such to his said client, and it would have violated legal ethics to have represented conflicting interests.

"6. That if said Codicil had not been so decreed invalid in Texas said Porters would have easily netted at least $300,000.00 under and during the reasonable life of the trust therein created, mainly in regular investigative duties as per said paragraphs numbered 6. and 29. of said Codicil, and they would have done so but for the aforesaid conspiracy and wrongful acts and conduct of plaintiffs in bringing about the termination shown."

In the referred-to answer and counterclaim, the Porters plead further that the educational institutions and Texas bank were "estopped from obtaining anything or any relief for themselves" or for others; that the Porters were entitled to a lien

against the assets of the estate for any money judgment that they might recover; that if the codicil had been decreed valid in Texas the Porters would "have easily netted $300,000.00" in fees, and prayed for judgment in said amount against the educational institutions.

The Attorney Generals of the States of Oklahoma, Texas and Arkansas filed disclaimers as did the Texas bank.

The plaintiffs in error filed a cross-claim against each of the Attorney Generals. Therein the Porters repeated the charge set forth in their counterclaim heretofore referred to and plead that "the plaintiffs and said three named attorney general defendants and said defendant First National Bank in Dallas, Texas, by their present pleadings and concerted actions herein are now seeking to have said Codicil in Oklahoma decreed of no force and effect based on said cancellation thereof in Texas, and with full notice and knowledge of both said contest settlements in Texas, and they are not only estopped therefrom of their own wrongful acts but they are jointly and severally liable therefor to the trust estate created under the Codicil trust * * *" and that "The alleged actions and conduct of the attorney generals mentioned were and are wholly outside the scope of their respective authorities as public officials, and thus ultra vires in nature, as on the contrary it was and is their public duty to defend and uphold charitable trusts such as the one provided for in said codicil, and they did use and are using knowingly and willfully and without authority or sanction of law the prestige and influence of their respective public offices to accomplish and help accomplish the wrongful acts complained of to the detriment and destruction of the codicil trust and trust estate in Texas and so far in an attempted like detriment and destruction of the codicil trust and trust estate in Oklahoma, all with the apparent concerted wish and effort and action to that end on the part of the plaintiffs and said defendant Bank executor." The Porters prayed judgment against the several Attorney Generals and the Texas bank for $2,-000,000 paid out in settling the will contests and for $6,000,000 resulting from the alleged unjust destruction of testator's estate under judgment of the County Court of Texas.

The Porters also filed a "Reply and Cross Claim" against the Texas bank wherein they sought judgment against said bank for $200,000 as attorneys fee for legal services rendered in the domiciliary probate proceedings, $300,000 reasonably-expected trustee fee and an additional amount of $300,-000 as and for exemplary damages for "wrongful and wanton codicil cancellation" in Texas.

The trial court sustained the motions of the several Attorney Generals to dismiss the cross actions against them and same were dismissed and also sustained the motion to dismiss and demurrer of the Texas bank to the cross action filed against it. The case proceeded to trial against the remaining defendants. Following said trial the issues were found generally in favor of the plaintiffs. The trial court found further that the testator's codicil is without effect; that no trustee should be named to administer the trust alleged to have arisen because of the admission of said codicil to probate in Oklahoma, and that distribution of the estate should be made as set forth in the order of distribution which is directly involved in No. 37,996.

The Porters filed a motion for new trial and from order denying said motion this appeal was perfected on the original record.

■ The record discloses that Jno. W. Porter participated as an attorney for the Texas bank in the proceeding in the Texas county court that resulted in the codicil in controversy being struck down because of lack of testamentary capacity on the part of testator at time same was executed. Before judgment was entered in said proceeding the court asked Jno. W. Porter this question:

"Mr. Porter, do you individually and in your representative capacity, do you recommend this settlement and do you agree to be bound thereby and waive the right to appeal?"

To said question Jno. W. Porter answered as follows:

"In view of all of the facts and circumstances and the evidence introduced, I do."

The Porters here assert that in appearing in said proceeding and in making the answer that Jno. W. Porter made to the court's inquiry, Jno. W. Porter was appearing and answering as attorney for the Texas bank and not as an alleged co-trustee under the codicil; that knowledge gained in the capacity of attorney for the Texas bank is not imputable to him in his capacity as an alleged co-trustee and his answer to the court's inquiry as attorney for said bank is not binding upon him in his capacity of an alleged co-trustee. We are unable to agree.

A judgment is not subject to collateral attack on the grounds that it was obtained through "conspiring and conniving", or for that matter through fraud where the party complaining had knowledge of the alleged conspiring and conniving or fraud at the time the judgment was rendered. 49 C.J.S. Judgments §§ 372, 434, pp. 735 and 861; Moore v. Moore, Tex.Civ.App., 259 S.W. 322.

In view of the fact that the complained-of judgment of the County Court of Gregg County, Texas, is not subject to collateral attack, claims for damages and other relief asked by the Porters which are based upon the proposition that said judgment is void must fail. The Porters have therefore failed to establish their claim to prospective trustee or attorneys' fees which they allege would have been earned under the trust provisions of the codicil, and have also failed to establish that amounts distributed in distributing testator's estate should be restored to the trust which was in effect declared inoperative by the County Court of Gregg County, Texas. It follows that the trial court only erred if the Porters are in fact entitled to maintain their cross-bill against the Texas bank for additional fees earned as attorneys for said bank in its capacity as executor of testator's estate in Texas.

■ The fact that the codicil was not timely contested in the County Court of Muskogee County, Oklahoma, is, in our opinion, under the facts of this case, without significance. In Patterson v. Dickinson, 10 Cir., 193 F. 328, 333, a will was admitted to probate in Missouri, the state of testator's domicile. An ancillary proceeding to probate the will was subsequently instituted in California. A contest to the Missouri probate was thereafter sustained. In pointing out that the Missouri probate court of testator's domicile had exclusive jurisdiction to determine the validity of the will and that said court's judgment on said matter was binding upon the California probate court in which the ancillary probate proceeding had been instituted, the court had this to say:

"(2) The superior court of Los Angeles county was not vested with jurisdiction primarily to decide whether the instrument which had been admitted to probate in Missouri as the will of Rachael E. Dickinson was what it purported to be. The determination of that question belonged exclusively to the probate court of the decedent's domicile. That court having finally adjudicated the question, and having decreed that the instrument was not the last will and testament of the decedent, and that she died intestate, its judgment must be held to be final and conclusive upon any ancillary administration. * * *"

See also In re Randall's Estate, 8 Wash.2d 622, 113 P.2d 54, 56, and compare Lanyon v. O'Neal, Okl., 329 P.2d 850.

In their petition the plaintiff educational institutions only sought judgment declaring the codicil to be without force and effect and that no trustee should be named under the codicil. In its answer and disclaimer the Texas bank admitted that it was named as trustee in the codicil; that the County Court of Gregg County, Texas rendered a judgment declaring the codicil invalid and

void; that the Texas portion of testator's estate had been distributed in accordance with testator's will; that it "is without any right, title or interest in the Estate of Murray Case Sells now being administered in the County Court of Muskogee County, Oklahoma, and said bank, as Defendant, disclaims any right to be appointed as Trustee pursuant to the said codicil to the Will of Murray Case Sells, deceased, with respect to such estate in Oklahoma."

■ We are of the opinion that the Porters' cause of action for additional attorneys' fees is not germane to the cause of action set forth in the petition, and for said reason the Porters' cause of action cannot be maintained as a cross-bill against the Texas bank in this action. In the third paragraph of the syllabus to Baxley v. Timms, Okl., 316 P.2d 871, 872, we said:

"3. A cause of action set up in a cross-bill must be germane to the original controversy; and where a defendant seeks to set up new and distinct matter, not maintainable under the provisions of the Code as a counter claim, unless such matter is involved in a proper determination of the subject-matter of the original suit, a defendant will be required to litigate it in a separate action."

The trial court did not err in dismissing the Porters' cross-bill for additional attorneys' fees against the Texas bank.

The judgment of the trial court with the exception of that portion thereof ordering distribution of the estate as directed by the County Court of Muskogee County is affirmed. The County Court's order of distribution was not directly before the District Court in this proceeding, which statement is not true of the appeal in No. 37,996, and the order of distribution not being directly before the District Court on appeal, said District Court did not have jurisdiction to in effect affirm the order of distribution of the County Court.

In view of our opinion herein, it is unnecessary to consider other contentions of the Porters and the defendants in error.